UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:  }
        }
PATRICK A. KIRK and  }
CARLA M. KIRK,  }     Case No. 11-42390-JJR-13
        }
        Debtors.  }
_____

# MEMORANDUM OPINION

On December 6, 2011, the Debtors' amended plan (Doc. 35 and herein the "Plan") came before the Court for confirmation. During its 36-month commitment period the Plan proposes to pay only the Debtors' purchase money auto loan of $6,300 with 5% interest, the Debtors' attorney's fees of $2,500, filing fees of $274, trustee's commission of approximately $500, and a de minimis dividend to unsecured creditors.[1] The Plan provides that administrative fees – attorney's fees and filing fees – will be paid in full before any payments to creditors. At the confirmation hearing, the Court did not find the Plan complied with §§ 1325(a)(3) and 1325(a)(5)(B)(iii)(I) of the Bankruptcy Code,[2] and *sua sponte*[3] announced it would confirm the

---

[1] Debtors' amended Schedule F listed 19 unsecured creditors holding claims totaling $43,178.43. The Plan stated it would pay approximately 1% of unsecured claims.

[2] 11 U.S.C. § 101 *et seq.*, and herein referred to as the "Code." The symbol "§" is a reference to a section, subsection, paragraph or other subdivision of the Code.

[3] *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1381 n. 14 (2010) (bankruptcy courts required to address defects in proposed plans even if no creditor raises the issue); *Alabama Dept. Of Economic & Community Affairs v. Ball Healthcare-Dallas, LLC (In re Lett)*, 632 F.3d 1216, 1228-30 (11th Cir. 2011) (bankruptcy courts have independent obligation to determine if absolute priority rule was violated); *Universal American Mortgage Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 828 n. 6 (11th Cir. 2003) (bankruptcy courts have independent obligation to ensure compliance with the Code).

1

Plan only if it were modified to provide for payments to the purchase-money auto lender in equal monthly installments without being delayed in deference to payment of administrative expenses, and in particular attorney's fees. Counsel for the Debtors objected to the Court's prescribed modification, and asked the Court to confirm the Plan without requiring any change in the timing and application of Plan payments.

Code § 1325(a)(3) states that the court shall confirm a plan if "the plan has been proposed in good faith and not by any means forbidden by law." Critical to this Court's analysis regarding whether the good faith standard of 11 U.S.C. § 1325(a)(3) has been satisfied, is the Eleventh Circuit's decision in *Kitchens v. Georgia Railroad Bank & Trust Co. (In re Kitchens),* 702 F.2d 885, 888-89 (11th Cir. 1983). According to the Eleventh Circuit, good faith factors to be considered by a bankruptcy court in a chapter 13 case include:

> (1) amount of debtor's income from all sources; (2) living expenses of debtor and his dependents; (3) amount of attorney fees; (4) probable or expected duration of debtor's Chapter 13 plan; (5) motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; (6) debtor's degree of effort; (7) debtor's ability to earn and likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expense; (9) frequency with which debtor has sought relief under [Title 11]; (10) circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors; and (11) burden which plan's administration would place on trustee.

*Id*. at 888-89. The above "*Kitchens* factors" are not exhaustive, and additional considerations are "the extent to which claims are modified", the "substantiality of the repayment to the unsecured creditors", and whether debts would be nondischargeable in chapter 7. *In re Nelson*, 2009 WL 2241567 (Bankr. M.D. Ala. 2009) (Williams, Bankr. J.) (quoting *Kitchens*, 702 F.2d at 889).

With the above good-faith factors in mind, the Court observes that the Debtors' Plan pays very little to unsecured creditors. The largest single payment, other than to the auto lender, will be for attorney's fees, and payments on the auto loan, incurred to purchase the Debtors' 2004

2

Cadillac in April 2011 – only five months before this case was filed – will not commence for approximately 8 months. The delay is the result of attorney's fees being given total priority in time of payment over the secured claim for the auto loan.

The proposed treatment of purchase-money, secured debt that was incurred shortly before a case was filed, should, in any case, be given close scrutiny. In this case, delaying payments on the secured claim for 8 months to allow the Debtors' attorney's fees to be first fully paid demonstrates a lack of bona fides and an absence of good faith; thus, the Court finds the Plan fails to cross the good faith threshold required by § 1325(a)(3).

Finding good faith in a proposed Plan for purposes of § 1325(a)(3) may, in some instances, require a subjective evaluation of the totality of the circumstances; however, the Debtors' Plan also fails to satisfy an objective standard for confirmation. Subpart (5)(B)(iii)(I) of Code § 1325(a) states that "the court shall confirm a plan if . . . with respect to each allowed secured claim . . . the plan provides that . . . if property to be distributed . . . is in the form of periodic payments, such payments shall be in equal monthly amounts . . . ." In other words, if an allowed secured claim, such as the auto lender's claim in the instant case, is to be paid with periodic payments – which is virtually always the situation – those payments must be in equal amounts and paid monthly, beginning with the first disbursement by the trustee following confirmation. The proposed treatment of the secured claim in the Debtors' Plan violates § 1325(a)(5)(B)(iii)(I); hence the Plan may not be confirmed.

Under the Debtors' Plan, the periodic payments on the secured claim will be $223.84 each month,[4] but according to an express provision in the Plan, those payments will not commence until "after payment of administrative expenses," which in this case means after the

---

[4] Each payment on the secured claim is referred to in the Plan as a "proposed fixed payment."

3

payment of attorney's fees and filing fees. The Plan provides for weekly payments to the trustee of $80 each, which will average $346.67 per month. Administrative expenses total $2,774. Thus it will be approximately 8 months before the $223.84 monthly payments to the secured creditor will commence – not the equal monthly payments, beginning with the first post-confirmation disbursement, required by § 1325(a)(5)(B)(iii)(I). The delay in paying fixed, equal monthly post-confirmation payments on the secured claim, while administrative fees are being paid, is an insurmountable obstacle to confirmation of the Debtors' Plan as presently proposed.[5]

Section § 1326(a)(1)(C) requires debtors to make adequate protection payments to creditors whose allowed claims are secured by purchase money security interests in personal property, during the hiatus between commencement of a case and plan confirmation.[6] The Debtors' Plan does propose monthly adequate protection payments of $15.00 each – substantially less than the "fixed" monthly Plan payment of $223.84. Any notion that continuing adequate protection payments post confirmation will satisfy § 1325(a)(5)(B)(iii)(I) completely ignores the plain language of that Code provision. Code § 1326(a)(1)(C) is intended to provide adequate protection to secured creditors pre-confirmation, and its application ends at confirmation. The Debtors' Plan is ambiguous, and may be construed as proposing to pay nothing to the secured creditor post-confirmation while administrative expenses are being paid, or its intent may be to continue adequate protection payments during such time; however, neither construction of the Plan will satisfy § 1325(a)(5)(B)(iii)(I). To say the obvious, waiting until administrative expenses are fully paid, during which time either (x) no payments are made, or (y)

---

[5] Delay in commencing equal monthly payments would be permitted if the secured creditor *expressly* agreed to such treatment. Mere failure to affirmatively object should not be construed as consent.

[6] Adequate protection payments must be paid before, and have priority over debtor's attorney's fees. *In re Dispirito*, 371 B.R. 695 (Bankr. D.N.J. 2007).

4

monthly payments of $15.00 each are made, followed by monthly payments of $223.84 for the remainder of the Plan's term, does not satisfy the requirement that periodic payments be in "equal monthly amounts."

All payments provided for in a chapter 13 plan must include sufficient amounts to pay each secured claim in equal monthly amounts commencing with the first payment due no later than 30 days after the petition date. §§ 1325(a)(5)(B)(iii)(I), 1326(a)(1). Upon confirmation, the required "equal monthly amounts" of pre-confirmation plan payments allotted to secured claims must be remitted by the trustee to the respective secured creditors. § 1326(a)(2). However, when the trustee makes her initial distribution to creditors holding allowed *purchase-money* claims, their "equal monthly amounts" that accrued – and should have been paid – between the petition date and confirmation, are reduced by pre-confirmation adequate protection payments.[7] *Id*. If pre-confirmation monthly payments and adequate protection payments are not fully paid and current, a plan may not be confirmed and is subject to dismissal pursuant to § 1307(c)(4) – "failure to commence making timely payments under section 1326 of this title." In any event, the Code could not be more clear: Commencing with the first plan payment due no later than 30 days after a case is filed, the debtor must pay consecutive monthly payments in equal amounts that are sufficient to pay allowed secured claims over the plan's commitment period,[8] less only

---

[7] Code § 1326(a)(1)(C) plainly contemplates adequate protection payments are to be made by a debtor to secured creditors pending confirmation of the plan: "the debtor shall commence making payments not later than 30 days . . . that provides adequate protection *directly* to a creditor holding an allowed [purchase-money secured] claim . . . ." (emphasis added). In most instances in this division, adequate protection payments are paid by debtors directly to the standing chapter 13 trustee who in turn remits them to secured creditors. Although this procedure involves two steps to get the payments to creditors, it provides a credible record of payment and the court is aware of no complaints in this regard from secured creditors.

[8] The plan's commitment period is measured from the first payment due after the petition date, not confirmation. *See In re Musselman*, 341 B.R. 652 (Bankr. N.D. Ind. 2005); *In re Collier*, 193 B.R. 1 (Bankr. D. Ariz. 1996); *In re Evans*, 183 B.R. 331 (Bankr. S.D. Ga. 1995);

5

amounts attributable to mandatory adequate protection paid pre-confirmation on allowed, purchase-money secured claims.[9] The amount of additional sums included in plan payments will depend on what other claims and expenses are being paid, the amounts thereof, and the timing of their payments. But similar flexibility is not allowed with respect to the equal monthly amounts that must be paid on secured claims beginning with the first post-confirmation disbursement.[10]

This Court is not alone in reaching the above conclusion regarding payment of secured claims. In *In re Williams*, 385 B.R. 468 (Bankr. S.D. Ga. 2008), the bankruptcy court examined the expedited confirmation timeframe established with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), under which confirmation hearings are now held within 45 days of the first meeting of creditors, pursuant to § 1324(b). BAPCPA also amended § 1325(a)(5), as discussed *supra*, to require periodic payments on secured claims be made in equal monthly amounts, and to further require that the amount of such payments (when secured by personal property) be sufficient to provide adequate protection during the plan's term. *Williams*, 385 B.R. at 473 (discussing BAPCPA changes to "the mathematics of Chapter 13 plans with side effects for the payment of attorney fees," quoting 5

---

all cited in *In re McGraw*, 04-11693-MAM and *In re Morris*, 04-12209-WSS (Bankr. S.D. Ala., joint order issued in both cases dated July 31, 2009 by Mahoney, Bankr. J. and Shulman, Chief Bankr. J.). Thus, the initial plan payment due within 30 days of commencement of the case is the payment due for the first month of plan's commitment period. The end of the commitment period should correspond with the due date of the last scheduled payment provided for under the plan.

[9] Code § 1325(a)(5)(B)(iii)(I) requires that all allowed secured claims be paid in equal monthly amounts whether such claims are attributable to purchase money or non-purchase money obligations. The only difference between the payment of purchase money versus non-purchase money secured claims is that the former are entitled to adequate protection payments pending plan confirmation. § 1326(a)(1)(C).

[10] If filing fees are being paid in installments pursuant to 28 U.S.C. § 1930(a), this opinion should not be interpreted as allowing a delay in the payment of such installments, or a reduction or delay in payments due secured creditors while filing fee installments are being paid.

6

Keith M. Lundin, *Chapter 13 Bankruptcy* § 442.1, p. 442-2 (3d ed. 2000 & Supp. 2007-1)). As analyzed in *Williams,* these provisions combine to eliminate the possibility of two tiers of post-confirmation payments on secured claims: one amount while attorney's fees and other administrative expenses are being paid, and another larger amount once the administrative fees are paid in full. *See Williams*, 385 B.R. at 473-75 (collecting cases and finding the better-reasoned view to be that plan payments on secured claims must be "equal monthly payments beginning with the first distribution post-confirmation and the payment amount must be sufficient to provide adequate protection during the period of the plan."). This Court agrees with the *Williams* court's interpretation of the relevant Code sections, and with its conclusion that staggering the payments to secured claimants post-confirmation to allow attorney's fees and other administrative fees to be paid out of the earlier post-confirmation disbursements is not permissible under the statutory framework of the Code. *See also In re Willis* (2011 WL 5552543 (Bankr. D. Kan., Nov. 14, 2011) (collecting cases and following the reasoning of *Williams* and similar cases).

A separate order will be entered denying confirmation of the Debtor's Plan as presently proposed, and rescheduling a hearing on confirmation within 28 days. The Debtors shall have 14 days from the entry of this opinion to amend their Plan to conform with this Opinion.

Dated: December 21, 2011

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge