UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re: }
}
PATRICK A. KIRK and }
CARLA M. KIRK, } Case No. 11-42390-JJR-13
}
Debtors. }

## MEMORANDUM OPINION

On January 18, 2012, the Debtors' third amended plan (Doc. 50 and herein the "Plan") came before the Court for confirmation.[1] During its 36-month term the Plan proposes to pay only the Debtors' purchase money auto loan of $6,300 with 5.25% interest, their attorney's fees of $2,500, $274 for filing fees, the trustee's commission of approximately $500, and a de minimis dividend to unsecured creditors.[2] The Plan provides that administrative fees – attorney's fees and filing fees – will be paid in full before any payments to creditors. At the confirmation hearings, the Court did not find the Plan complied with §§ 1325(a)(3) and

---

[1] Confirmation of a similar plan (Doc. 35) was previously denied for reasons set forth in a Memorandum Opinion entered December 21, 2011 (Doc. 43). The previous Opinion and related Order (Doc. 44) were withdrawn (Doc. 49) to allow the Court to more thoroughly address what should be paid by the trustee from her initial post-confirmation disbursement made pursuant to 11 U.S.C. § 1326(a)(2). In the meanwhile, the Debtors filed two amended plans (Docs. 47, 50), the latter now being under consideration for confirmation.

[2] Debtors' amended Schedule F (Doc. 19) listed 19 unsecured creditors holding claims totaling $43,178.43. The Plan stated it would pay approximately 6% of unsecured claims. The Plan as currently proposed has a term of 36 months, although the Debtors' Statement of Current Monthly Income (Doc. 7) indicates their applicable commitment period is 5 years. The Debtors acknowledge they must propose a 5-year plan, or prove they are entitled to propose a plan with a term of less than 5 years, and will be given an opportunity to do so.

1

1325(a)(5)(B)(iii)(I) of the Bankruptcy Code,[3] and *sua sponte*[4] announced it would confirm the Plan only if it were modified to provide for payments to the purchase-money auto lender in equal monthly installments without being delayed in deference to payment of administrative expenses, and in particular attorney's fees. Counsel for the Debtors objected to the Court's prescribed modification, and asked the Court to confirm the Plan without requiring any change in the timing and application of Plan payments.

Code § 1325(a)(3) states that the court shall confirm a plan if "the plan has been proposed in good faith and not by any means forbidden by law." Critical to this Court's analysis regarding whether the good faith standard of 11 U.S.C. § 1325(a)(3) has been satisfied, is the Eleventh Circuit's decision in *Kitchens v. Georgia Railroad Bank & Trust Co. (In re Kitchens),* 702 F.2d 885, 888-89 (11th Cir. 1983). According to the Eleventh Circuit, good faith factors to be considered by a bankruptcy court in a chapter 13 case include:

> (1) the amount of the debtor's income from all sources; (2) the living expenses of the debtor and his dependents; (3) the amount of attorney fees; (4) the probable or expected duration of the debtor's Chapter 13 plan; (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; (6) the debtor's degree of effort; (7) the debtor's ability to earn and likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expense; (9) the frequency with which debtor has sought relief under [Title 11]; (10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors; and (11)

---

[3] 11 U.S.C. § 101 *et seq.*, and herein referred to as the "Code." The symbol "§" is a reference to a section, subsection, paragraph or other subdivision of the Code.

[4] *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1381 n. 14 (2010) (bankruptcy courts required to address defects in proposed plans even if no creditor raises the issue); *Alabama Dept. Of Economic & Community Affairs v. Ball Healthcare-Dallas, LLC (In re Lett)*, 632 F.3d 1216, 1228-30 (11th Cir. 2011) (bankruptcy courts have independent obligation to determine if absolute priority rule was violated); *Universal American Mortgage Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 828 n. 6 (11th Cir. 2003) (bankruptcy courts have independent obligation to ensure compliance with the Code); *In re Anderson*, 458 B.R. 494, 503 (Bankr. E.D. Wisc. 2011) ("The bankruptcy court cannot confirm a plan that contains provisions contrary to law, no matter how those defects come to its attention.").

the burden which the plan's administration would place on the trustee.

*Id.* at 888-89. These factors are not exhaustive, and additional considerations are "the extent to which claims are modified", the "substantiality of the repayment to the unsecured creditors", and whether debts would be nondischargeable in chapter 7. *In re Nelson*, 2009 WL 2241567 (Bankr. M.D. Ala. 2009) (Williams, Bankr. J.) (quoting *Kitchens*, 702 F.2d at 889).

With the above good-faith factors in mind, the Court observes that the Debtors' Plan pays very little to unsecured creditors. The largest single payment, other than to the auto lender, will be for attorney's fees, and payments on the auto loan, incurred to purchase a Cadillac in April 2011 – only five months before this case was filed – will not commence for approximately eight months. The delay is the result of attorney's fees being given total priority in time of payment over the secured claim for the auto loan.

The proposed treatment of purchase-money, secured debt that was incurred shortly before a case was filed, should, in any case, be given close scrutiny. And in this case, delaying payments on the secured claim for eight months to allow the Debtors' attorney's fees to be first fully paid demonstrates a lack of bona fides and an absence of good faith; thus, the Court finds the Plan fails to cross the good faith threshold required by § 1325(a)(3).

Finding good faith in a proposed Plan for purposes of § 1325(a)(3) may, in many instances, require a subjective evaluation of the totality of the circumstances; however, the Debtors' Plan also fails to satisfy an objective standard for confirmation. Code § 1325(a)(5)(B)(iii)(I) states that "the court shall confirm a plan if . . . with respect to each allowed secured claim . . . the plan provides that . . . if property to be distributed . . . is in the form of periodic payments, such payments shall be in equal monthly amounts . . . ." In other words, if an allowed secured claim, such as the auto lender's claim in the instant case, is to be paid with

3

Case 11-42390-JJR7    Doc 55    Filed 01/23/12    Entered 01/23/12 16:20:00    Desc Main
Document      Page 3 of 12

periodic payments – which is virtually always the proposal – those payments must be in equal amounts and paid monthly, and as discussed below, payments must begin with the first disbursement by the trustee following confirmation. The proposed treatment of the secured claim in the Debtors' Plan violates § 1325(a)(5)(B)(iii)(I); hence the Plan as now proposed cannot be confirmed.[5]

The Debtors' Plan provides for weekly payments to the trustee of $80 each, which will average $346.67 per month. And the trustee is to make periodic payments on the secured claim of $224.54 each month;[6] however, according to an express provision in the Plan, those payments will not commence until "after payment of administrative expenses," or more to the point: after payment of attorney's fees. Administrative expenses – attorney's fees and filing fees – total $2,774. Thus it will be approximately eight months before the $224.54 monthly payments to the secured creditor will commence – not the equal monthly payments, beginning with the first post-confirmation disbursement, required by § 1325(a)(5)(B)(iii)(I). The delay in paying equal monthly post-confirmation payments on the secured claim, while administrative fees are being paid, is an insurmountable obstacle to confirmation of the Debtors' Plan as presently proposed.[7]

Section § 1326(a)(1)(C) requires debtors to make pre-confirmation adequate protection payments to creditors whose allowed claims are secured by purchase money security interests in

---

[5] In a previous opinion this Court stated that "delaying payments on secured claims in deference to administrative claims appears to be contrary to § 1325(a)(5)(B)(iii)(I), which requires that 'periodic payments [on secured claims] . . . shall be in equal monthly amounts.'" *In re Hicks*, 2011 WL 2414419, n.3 (Bankr. N.D. Ala.) (quoting *In re Williams*, 385 B.R. 468, 473 (Bankr. S.D. Ga. 2008).

[6] Each payment on the secured claim is referred to in the Plan as a "proposed fixed payment."

[7] Delay in commencing equal monthly payments would be permitted if the secured creditor *expressly* agreed to such treatment. Contrary to what some other courts have held, mere failure to affirmatively object should not be construed as consent.

4

personal property; those payments must be made during the hiatus between commencement of a case and plan confirmation.[8] The Debtors' Plan does propose monthly adequate protection payments of $63.00 each – substantially less than the "fixed" monthly payment of $224.54 the Plan proposes to pay once administrative expenses are satisfied. Any notion that continuing § 1326(a)(1)(C) adequate protection payments post confirmation will satisfy § 1325(a)(5)(B)(iii)(I), when the adequate protection payments are less than the monthly amount of plan payments on the secured claim, completely ignores the plain language of the Code.

Code § 1326(a)(1)(C) mandates the payment of pre-confirmation adequate protection, but that Code § is not applicable post-confirmation.[9] Clause (II) of § 1325(a)(5)(B)(iii) provides that the equal monthly payments required by clause (I) of that same Code §, will take over the job of adequate protection after confirmation. Together, clauses (I) and (II) of § 1325(a)(5)(B)(iii) read as follows:

> [T]he court shall confirm a plan . . . if property to be disbursed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and [if] the holder of the claim is secured by personal property, the amount of such payments [ i.e. the equal monthly amounts] shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan . . . .

The Debtors' Plan is ambiguous, and may be construed as proposing to pay nothing to the secured creditor post-confirmation while administrative expenses are being paid, or its intent may be to continue the pre-confirmation adequate protection payments post-confirmation; however, neither interpretation of the Plan will satisfy § 1325(a)(5)(B)(iii). To say the obvious, waiting until administrative expenses are fully paid, while either (x) no payments are made – an

---

[8] Adequate protection payments must be paid before and have priority over debtor's attorney's fees. *In re Dispirito*, 371 B.R. 695 (Bankr. D.N.J. 2007).

[9] Code § 1326(a)(1)(C) allows a debtor to reduce pre-confirmation plan payments by the amount of pre-confirmation adequate protection paid to secured creditors.

amount of $.00, or (y) monthly payments of $63.00 each are made for eight months, and in either event followed by monthly payments of $224.54 for the remainder of the Plan's term, does not satisfy the requirement that periodic payments on secured claims be in "equal monthly amounts."

This Court is not alone in reaching the above conclusion regarding payment of secured claims. In *In re Williams*, 385 B.R. 468 (Bankr. S.D. Ga. 2008), the court examined the expedited confirmation timeframe established with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), under which confirmation hearings are now held within 45 days of the first meeting of creditors, pursuant to § 1324(b). BAPCPA also amended § 1325(a)(5) to require periodic payments on secured claims be made in equal monthly amounts, and to further require that the amount of such payments (when secured by personal property) be sufficient to provide adequate protection during the plan's term. *Williams*, 385 B.R. at 473 (discussing BAPCPA changes to "the mathematics of Chapter 13 plans with side effects for the payment of attorney fees," quoting 5 Keith M. Lundin, *Chapter 13 Bankruptcy* § 442.1, p. 442-2 (3d ed. 2000 & Supp. 2007-1)). As analyzed in *Williams,* these provisions combine to eliminate the possibility of two tiers of post-confirmation payments on secured claims: one amount while attorney's fees and other administrative expenses are being paid, and another larger amount once the administrative fees are paid in full. *See Williams*, 385 B.R. at 473-75 (collecting cases and finding the better-reasoned view to be that plan payments on secured claims must be "equal monthly payments beginning with the first distribution post-confirmation and the payment amount must be sufficient to provide adequate protection during the period of the plan."). This Court agrees with the *Williams* court's interpretation of the relevant Code sections, particularly its interpretation of "periodic payments" and the conclusion that staggering payments to secured claimants post-confirmation to allow attorney's fees and

other administrative expenses to be more rapidly paid is not permissible under the statutory framework for distribution of chapter 13 plan payments. *See also In re Willis*, ___ BR ___, 2011 WL 5552543 (Bankr. D. Kan., Nov. 14, 2011) (collecting cases, discussing both lines of reasoning, and following the reasoning of *Williams* and similar cases).

The *Williams* court specifically adopted the opinions expressed in *In re Denton*, 370 B.R. 441 (Bankr. S.D. Ga. 2007), and criticized the line of cases allowing two tiers of payments post confirmation, and their attempts to reconcile the "collision of these stakeholders—the attorney armed with a priority claim and the lienholder entitled to adequate protection and equal monthly payments." *Williams,* 385 B.R. at 473, n. 11. The *Williams* court summarized the arguments on both sides of the issue:

> Since BAPCPA, several courts have attempted to provide for these competing claims by creating a two-tier post-confirmation payment system. This two-tier system is designed to allow debtors' attorneys to be paid in full prior to the commencement of equal monthly payment provision of § 1325(a)(5)(B)(iii)(I). These courts conclude adequate protection payments may continue post-confirmation as superpriority administrative expenses under § 507(b) until debtor's counsel is paid in full. Once debtor's counsel is paid in full, equal monthly payments of § 1325(a)(5)(B)(iii)(I) commence. *See In re DeSardi,* 340 B.R. 790, 802–803 (Bankr.S.D.Tex.2006) (concluding equal monthly payments required by § 1325(a)(5)(B)(iii)(I) means payments must be equal once they begin, not that such equal monthly payments must begin at the first post-confirmation distribution; and allowing post-confirmation adequate protection payments as § 507(b) superpriority administrative expenses). *See also In re Erwin,* 376 B.R. 897, 902 (Bankr.C.D.Ill.2007) (the equal monthly payments referred to in § 1325 require equal monthly payments from the debtor, not the Trustee, and prevents the debtor from back-loading his payments to secured creditors); *In re Hill,* 2007 WL 499622, at *6 (Bankr.M.D.N.C.2007) (concluding post-confirmation adequate protection payments do not need to be the same as the equal monthly payments, but must be in an amount sufficient to provide adequate protection to such claimants); *In re Blevins,* 2006 WL 2724153, at *2 (Bankr.E.D.Cal.2006) (stating § 1325(a)(5)(B)(iii)(I) does not require equal payments be made over the life of the plan); *In re Chavez,* 2008 WL 624566, at *1 (Bankr.S.D.Tex.2008) ("[I]f the property to be distributed to the secured creditor under the plan takes the form of periodic payments, the payments shall be in equal monthly amounts once they begin and continue to be equal until they

7

cease. It does not require that such payments begin on the effective date of the plan or that they continue over the life of the plan.")

Conversely, in [the Southern District of Georgia], Judge Dalis, in *In re Denton,* 370 B.R. 441 (Bankr.S.D.Ga.2007) found nothing in the Bankruptcy Code to support this two-tier interpretation. Judge Dalis points out these courts appear to treat "periodic payments" as a defined term, meaning "payments on an amortized debt, thus creating and artificially distinguishing a counterpart to 'adequate protection payments,' which bankruptcy practitioners have long understood as a term of art." *Id.* at 445. There is nothing in the Bankruptcy Code to lead one to conclude that the words "periodic payments" mean anything different than the common understanding of "payments that recur at regular intervals." *Id.*

> It follows that pre-confirmation adequate protection payments may not be extended beyond the date of confirmation when the monthly amount of the adequate protection payment is less than the monthly amount of payment on the allowed secured claim under the plan. This scenario, in which post-confirmation payments characterized as "adequate protection payments" are less than post-confirmation payments characterized as "periodic payments," is precisely the "solution" to the problem of attorney's fees endorsed in *In re DeSardi, In re Hill*, and *In re Blevins.* Because all periodic payments to a secured creditor post-confirmation must be in equal monthly amounts, this solution is not consistent with the requirements of the Code.

*Id.* at 446.

I agree with the *Denton* analysis. The term "periodic payments" refers to all recurring post-confirmation payments to be made to secured creditors. . . . Unless the creditor agrees otherwise, the plan must provide for such creditors to receive equal monthly payments beginning with the first distribution post-confirmation *and* the payment amount must be sufficient to provide adequate protection during the period of the plan. 11 U.S.C. §§ 1325(a)(5)(B)(iii)(I) and (II). The use of "and" as a conjunctive requires the two phrases be applied together.

*Williams,* 385 B.R. at 473-75 (quoting *Denton*, 370 B.R. at 445).

Several other courts have followed the *Denton* analysis, and some have paid particular attention to the argument, put forth by Debtors' counsel in the instant case, that that the language of § 1326(b)(1) mandates a delay in the equal monthly payments to secured creditors because that Code § requires the full payment of attorney fees prior to any distribution of periodic

8

Case 11-42390-JJR7    Doc 55    Filed 01/23/12    Entered 01/23/12 16:20:00    Desc Main
Document      Page 8 of 12

cease. It does not require that such payments begin on the effective date of the plan or that they continue over the life of the plan.")

Conversely, in [the Southern District of Georgia], Judge Dalis, in *In re Denton,* 370 B.R. 441 (Bankr.S.D.Ga.2007) found nothing in the Bankruptcy Code to support this two-tier interpretation. Judge Dalis points out these courts appear to treat "periodic payments" as a defined term, meaning "payments on an amortized debt, thus creating and artificially distinguishing a counterpart to 'adequate protection payments,' which bankruptcy practitioners have long understood as a term of art." *Id.* at 445. There is nothing in the Bankruptcy Code to lead one to conclude that the words "periodic payments" mean anything different than the common understanding of "payments that recur at regular intervals." *Id.*

> It follows that pre-confirmation adequate protection payments may not be extended beyond the date of confirmation when the monthly amount of the adequate protection payment is less than the monthly amount of payment on the allowed secured claim under the plan. This scenario, in which post-confirmation payments characterized as "adequate protection payments" are less than post-confirmation payments characterized as "periodic payments," is precisely the "solution" to the problem of attorney's fees endorsed in *In re DeSardi, In re Hill*, and *In re Blevins.* Because all periodic payments to a secured creditor post-confirmation must be in equal monthly amounts, this solution is not consistent with the requirements of the Code.

*Id.* at 446.

I agree with the *Denton* analysis. The term "periodic payments" refers to all recurring post-confirmation payments to be made to secured creditors. . . . Unless the creditor agrees otherwise, the plan must provide for such creditors to receive equal monthly payments beginning with the first distribution post-confirmation *and* the payment amount must be sufficient to provide adequate protection during the period of the plan. 11 U.S.C. §§ 1325(a)(5)(B)(iii)(I) and (II). The use of "and" as a conjunctive requires the two phrases be applied together.

*Williams,* 385 B.R. at 473-75 (quoting *Denton*, 370 B.R. at 445).

Several other courts have followed the *Denton* analysis, and some have paid particular attention to the argument, put forth by Debtors' counsel in the instant case, that that the language of § 1326(b)(1) mandates a delay in the equal monthly payments to secured creditors because that Code § requires the full payment of attorney fees prior to any distribution of periodic

payments to secured creditors.[10] See, e.g., *In re Sanchez*, 384 B.R. 574 (Bankr. D. Or. 2008) (harmonizing § 1326(b)(1)and § 1325(a)(5)(b)(iii) by pointing out that administrative claimant may insist on concurrent payments with, but not full payment before, payments on non-administrative claims); and *In re Espinoza*, 2008 WL 2954282 (Bankr. D. Utah 2008) (rejecting *DeSardi*, *supra*, interpretation and finding that approach followed by *DeSardi* and its progeny "appear[s] to carve out an exception that is not present in § 1325(a)(5)(B)(iii)").

Code § 1326(b)(1) provides, "Before or at the time of each payment to creditors under the plan, there shall be paid – (1) any unpaid claim of the kind specified in section 507(a)(2)." (Fees charged by debtors' attorneys are § 507(a)(2) claims). As mentioned, Debtors' counsel argues that "paid" means "paid in full." The Court disagrees, based in part upon the plain language of the statute which contains the disjunctive "or at the time of each payment to creditors under the plan." This language provides that if not paid before, the administrative fees may be paid contemporaneously with "each payment" to creditors under the plan, and if those creditors being paid contemporaneously hold secured claims, nothing in § 1326(b)(1) carves out an exception to the requirement mandated by § 1325(a)(5)(B)(iii)(I) that they be paid in equal monthly amounts commencing at the effective date – confirmation – of the plan. While this Court strongly supports the goal of paying debtors' attorneys for the valuable services they provide, the Court is constrained by the language of the Code and cannot find in the interplay between § 1326(b)(1) and § 1325(a)(5)(B)(iii)(I) the result urged by Debtors' counsel.

Moreover, this Court disagrees with the attempt by some courts to "de-link" clauses (I) and (II) of § 1325(a)(5)(b)(iii) by holding that "during the period of the plan" modifies "adequate protection" but not "such [periodic] payments," and therefore opens the door to delaying the

---

[10] That argument was part of the basis for the ruling in *In re DeSardi*, 348 B.R. 790 (Bankr. S.D. Tex. 2006), which was considered and rejected by the *Denton* and *Williams* courts.

9

commencement of the equal monthly payments on secured claims. *See, e.g., In re Hill*, 397 B.R. 259 (Bankr. M.D.N.C. 2007). To the contrary, the Court agrees with the statutory interpretation suggested in *In re Sanchez*, 384 B.R. 574, 578 (Bankr. D. Or. 2008):

> Under subsection (II) adequate protection is provided only by subsection (I)'s equal monthly payments. Subsection (II) then answers when this protection must be provided, by requiring it "during the period of the plan." The statute does not provide for equal monthly payments "during part of the period of the plan" or "during some of the period of the plan." This court construes "during the period of the plan" to mean equal monthly payments must commence with confirmation and last until the secured claim is paid.

In addition to the statutory interpretation set out above, this Court also strongly agrees with the *Denton* court's statement that an interpretation allowing a delay in periodic payments would not only be contrary to the language of the Code, but would "necessitate[] a case-by-case analysis that would impose an undue burden on the Trustee as well as on the resources of the court. I specifically disagree on this point with the *DeSardi* court, which concluded that a . . . case-specific analysis '[would] not render portions of the Code practically unworkable.'" *Denton*, 370 B.R. at 446 (quoting *DeSardi,* 340 B.R. at 806). This Court's own experience serves to disprove the impractical suggestion that each case be examined to determine if a delay in commencing equal monthly payments as proposed in a particular case, for a particular secured creditor, under its particular facts, is warranted and if so, to what extent. If the *DeSardi* case-by-case and claim-by-claim analysis were adopted, the proposed treatment of each secured claim would have to be evaluated under § 1325(a)(3) for a determination of good faith, not unlike the evaluation made at the beginning of this opinion to determine whether the Debtors' Plan was proposed in good faith in light of the eight-month delay in commencing post-confirmation payments to the Debtors' secured auto lender. During the year 2011 almost 1,700 chapter 13 cases were filed in Eastern Division of the Northern District of Alabama – a one-judge division.

10

The overwhelming majority of those cases had at least one secured claim, and many had several. The burden on judicial resources that would result from evaluating the proposed amount and timing of payments for each secured claim in so many cases would simply not be workable, and would not be a permissible alternative to the statutory requirements imposed by § 1325(a)(5)(B)(iii).[11]

In conclusion, the Court cannot confirm a chapter 13 plan unless the plan provides that the trustee will pay equal monthly payments on allowed secured claims, thereby satisfying § 1325(a)(5)(B)(iii), beginning with the initial post-confirmation distribution and continuing in the same amount each month until those secured claims are paid in full. If the plan also pays debtor's attorney fees pursuant § 1326(b)(1), those payments may be paid contemporaneously with payments to secured creditors, but the plan should be structured so that payments to the attorney neither reduce nor delay the required equal monthly payments to secured claimholders. Code §§ 1326(b) and 1325(a)(5)(B)(iii) are not incompatible, and chapter 13 plans may be structured to satisfy the requirements of both. Debtors' attorneys should not consider the consequences of this and similar decisions as having a draconian impact on their chapter 13 practice.[12] Although in many instances the time-span during which fees are paid under a plan will no doubt need to be extended to accommodate contemporaneous disbursements to secured creditors, the amount of total fees allowed will not be reduced. The Court is aware of anecdotes to the effect that doing away with a two-tiered system of paying secured claims will result in

---

[11] That is not to say that so long as the proposed payment of a secured claim complies with the equal monthly payment and adequate protection requirements of § 1325(a)(5)(B)(iii), the good faith requirement for confirmation of § 1325(a)(3) may be ignored.

[12] According to this division's standing chapter 13 trustee, during 2011 she collected $26,864,279.96 from chapter 13 debtors, of which 83% was disbursed to pay secured, priority and unsecured claimholders, and 12% was paid to debtors' attorneys for their fees. The Court assumes the remaining 5% was the trustee's commission. Trustee's Exhibit #1.

11

attorneys not being fully paid in cases that are ultimately dismissed before sufficient payments are made to cover attorney's fees. Little imagination is needed to anticipate a rebuttal to the foregoing that might be expressed by secured creditors. Nonetheless, if a major concern of chapter 13 attorneys is early default and dismissal of cases before their fees are fully paid, perhaps they should collect more of their fees before filing the cases, and consider heeding the advice offered in a pre-BAPCPA decision by another bankruptcy court: "[I]f the risk of non-payment of the debtors' attorney's fees under a plan is too great to justify taking the case if the secured creditors must be adequately protected, then that should tell the attorney something about the case."[13] That advice was made more credible with the enactment of BAPCPA and especially § 1325(a)(5)(B)(iii).

A separate order consistent with this opinion will be entered denying confirmation of the Debtors' Plan as presently proposed, but allowing them an opportunity to amend their Plan to conform with this opinion.

Dated this 23rd day of January 2012

/s/     James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

---

[13] *In re Cook*, 205 B.R. 437, 444 (Bankr. N.D. Fla. 1997).

Case 11-42390-JJR7    Doc 55    Filed 01/23/12    Entered 01/23/12 16:20:00    Desc Main
Document      Page 12 of 12